UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL CALLAHAN | : | CIVIL ACTION NO: 3:03CV213 (CFD) |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| WORLDWIDE WINES, INC. | : | |
| Defendant | : | NOVEMBER 13, 2003 |
| | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Worldwide Wines, Inc. ( "Worldwide") hereby submits this memorandum of law in support of its motion for summary judgment on all counts of Plaintiff Michael Callahan's ("Plaintiff") complaint.

For the reasons described herein, Plaintiff has offered no evidence on any of his three discriminatory termination claims which is sufficient to overcome the business reasons proffered by Defendant. Finally, Plaintiff has no private cause of action pursuant to Conn. Gen. Stat. Section 31-128g.

## I.    PROCEDURAL BACKGROUND

On or about January 7, 2003, Plaintiff instituted in state court a four count complaint alleging claims under Conn. Gen. Stat. Section 31-290a for workers' compensation

1

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

retaliation, the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. Section 46a–58 and 46a-60(1), the Family Medical Leave Act ("FMLA"), 29 U.S.C. Section 2601 et seq, and for alleged violations of Conn. Gen. Stat. Section 31-128a.

Defendant removed this case to the United States District Court, District of Connecticut on January 31, 2003 and, pursuant to the Court's pretrial orders, now moves for summary judgment on all counts.

## II.    STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Defendant hereby adopts by reference and incorporates as facts supporting this motion those contained in its Local Rule 56(a)1 Statement filed herewith.

## III.    ARGUMENT

### A.    Principles Governing the Issuance of Summary Judgement

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See, e.g., Celotex Corp. v. Catrett, 477 U.S. 321, 322-323 (1986). Accord Tomka v. The Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995). Summary judgment may be granted

2

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

where, regardless of the facts at issue, no cause of action exists. See Chandra Corp. v. Val-Ex, Inc., 2001 WL 669252 (S.D.N.Y. June 14, 2001)(attached hereto as Exhibit A). To defeat a properly supported motion for summary judgment, the non-moving party must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). See Apex Oil Co. v. DiMauro, 822 F. 2d 246 (2d Cir.), cert. denied, 484 U.S. 977 (1987). Moreover, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) (emphasis in original). Accord Rosa v. Gaynor, 784 F. Supp. 1, 3 (D.Conn. 1989).

## B.    Plaintiff Has Failed to Establish a Claim for Retaliation and/or Discrimination Pursuant to Conn. Gen. Stat. Section 31-290a.

Plaintiff's First Count claim for retaliation or discrimination pursuant to Conn. Gen. Stat. Section 31-290a is factually and legally inadequate. More particularly, Defendant is entitled to summary judgment because Plaintiff has failed to establish his prima facie case and had failed to offer any evidence of pretext. Conn. Gen. Stat. Section 31-290a states, in pertinent part:

> [n]o employer . . . shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for

3

workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

As with many anti-discrimination statutes, claims under Conn. Gen. Stat. Section 31-290a are analyzed by reference to the McDonnell Douglas burden-shifting framework applicable to claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.Sec. 2000e et seq. LaJeunesse v. Great Atlantic & Pacific Tea Company, 160 F.Supp.2d 324, 333 (D.Conn. 2001), citing Ford v. Blue Cross & Blue Shield of Conn., Inc., 216 Conn. 40, 54 (1990).

The traditional burden-shifting framework established by McDonnell Douglas Corp. v. Green 411, U.S. 792, 803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) has been modified by the decision of the United States Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) and its Second Circuit progeny. Under the burden-shifting scheme as now articulated by the Second Circuit, once an employee satisfies the prima facie elements of an employment discrimination case, the burden shifts to the employer to come forward with a non-discriminatory reason for the adverse employment action. "[O]nce the employer has proffered its nondiscriminatory reason, [however,] the employer will be entitled to summary judgment unless the plaintiff

4

can point to evidence that reasonably supports a finding of prohibited discrimination."

James v. New York Racing Association, 233 F.3d 149, 154 (2d Cir. 2000).

Once a nondiscriminatory reason is articulated, "all presumptions and special rules drop away; a case under Title VII becomes like any other case in that the plaintiff, in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim." James v. New York Racing Association,, supra., 233 F.3d at 154, citing Fisher v. Vassar College,114 F.3d 1332 (2d Cir. 1997). While an employee must, at a minimum, provide "evidence constituting a prima face case prior to the employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason", a prima facie case plus falsity may not be sufficient to submit the case to a jury. Id at 155-56. The court instead must examine "the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000), quoting Reeves, 530 U.S. at ----, 120 S.Ct. at 2106.

Plaintiff's prima facie case of retaliatory discharge in violation of Conn. Gen. Stat. Section 31-290a is dependent upon his demonstration that (1) he has filed a claim for workers' compensation benefits or otherwise exercised his rights under Chapter 568 of the Connecticut General Statutes; (2) he was disadvantaged by an employment action; and (3)

5

a causal connection exists between the protected activity and the adverse employment action. Hill v. Pinkerton Sec. & Investigation Servs., Inc., 977 F.Supp. 148, 158 (D.Conn. 1997).

While a "causal connection" may be shown directly through retaliatory animus, or indirectly by evidence of disparate treatment, Ford, 216 Conn. at 53, temporal proximity alone is inadequate for a claim brought pursuant to Conn. Gen. Stat. Section 31-290a. LaJeunesse v. Great Atlantic & Pacific Tea Company, supra, 160 F.Supp.2d at 334; Gallo v. Eaton Corp., 122 F.Supp.2d 293, 303-04 (D.Conn. 2000)("[a]bsent any other evidence of retaliatory motive mere temporal proximity alone is insufficient.")

Plaintiff offers neither direct evidence of retaliation nor proof of disparate treatment. Plaintiff was never questioned by Defendant about either time off or benefits for the alleged work-related injuries he suffered, nor was he denied them. (Plaintiff's Local Rule 56(a)1 Statement, paragraphs 66-7, 75-8, 127, 129, 131 hereinafter "Local Rule 56(a)1, para.    "). Further, he never requested any accommodations relating to his injuries and was instead consistently released to return to work without restriction. (Local Rule 56(a)1, paras. 66-7, 113-14). At his own request, Plaintiff sought and was granted reinstatement to full-time work in December, 1999. (Local Rule 56(a)1, paras. 55, 62-3).

6

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

More importantly, Defendant adopted in January or February of 1999 an objective productivity formula which required all drivers to meet a minimum average requirement of 175 miles in driving and deliver 150 cases of wine to 30 stops over a 10 hour day. (Local Rule 56(a)1, paras. 46-7). Because that formula was applied to all drivers and did not count time missed for any reason, including work-related injuries, Plaintiff cannot establish any element of disparate treatment. (Local Rule 56(a)1, para. 48). This is especially true because Plaintiff's poorly performing colleagues, Roger Watson and Gregg Mihalko, suffered the same consequences, route reassignment and termination, for their low productivity. (Local Rule 56(a)1, paras. 52, 123-4).

Plaintiff's claim of discrimination thus relies entirely upon the bald logic of the sequence of his claims for workers' compensation benefits from May 22, 1998 to November 22, 2000 followed by his termination on February 2, 2001. (Local Rule 56(a)1, para. 125). As described above, such a naked assertion, unaccompanied by any other evidence of a retaliatory motive, fails to establish a prima facie case of discrimination. Id; Indeed any temporal connection is non-existent. Nine months lapsed between Plaintiff's claim for workers' compensation benefits on January 18, 2000 and Defendant's original decision to terminate Plaintiff in October, 2000. Despite the fact that Plaintiff made an

7

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 02702

additional claim for benefits on November 22, 2000, Defendant reconsidered Plaintiff's termination in January, 2001. (Local Rule 56(a)1, paras. 119-21).

The same defect haunts the pretext portion of Plaintiff's claim.  No "evidence" but the same woefully speculative and unsupported allegation that he was fired because he had missed too much time from work is offered. (Local Rule 56(a)1, para. 125). Without specific facts, however, to support that contention, Plaintiff cannot conjure into being any genuine issues for trial.  Aslandis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993).

Although "the court need not inquire into the legitimacy of the reason given for termination because plaintiff has not established a prima facie case of discrimination", Id., Defendant nevertheless proffers Plaintiff's long-standing and objectively poor productivity as the legitimate, non-discriminatory reason for termination. (Local Rule 56(a)1, paras. 37, 50-1, 83-124).  In November, 1998, Plaintiff was subjected to surveillance because he had been seen shopping instead of driving his delivery truck and had been unable to explain his repeated disappearances from his assigned route.  After having been reviewed along with all his colleagues in March 1999, Plaintiff was the worst performing driver and was given a disciplinary route reassignment to the Defendant's easiest route. (Local Rule 56(a)1, paras. 50-1). Despite every effort to adjust his assignments or even reassign his work to other

8

drivers, Plaintiff consistently failed to complete his routes or to return to the warehouse. (Local Rule 56(a)1, paras. 83-124). At year end in 2000 and again in January 2001, Plaintiff was objectively the worst performing driver under the productivity formula. (Local Rule 56(a)1, paras. 120, 122; Exhibit 19; Exhibit 20; Exhibit 21; Exhibit 22. Plaintiff's performance was so bad that he was outperformed on his own route by novice, inexperienced drivers. (Local Rule 56(a)1, para. 117).

Plaintiff has not a shred of evidence with which to demonstrate the falsity of Defendant's characterization of his performance. He does not and cannot claim that the adoption or application of Defendant's productivity formula was discriminatory. It was, by Plaintiff's own admission, a fair and appropriate means of measuring productivity. (Local Rule 56(a)1, paras. 72-4, 118). In addition, Plaintiff offers no evidence contesting the underlying raw data of cases, miles or stops which led to his consistent ranking of dead last under the productivity formula. (Local Rule 56(a)1, paras. 72-4, 118).

Plaintiff's objective rankings as the least productive driver are corroborated by the barrage of unsolicited complaints levied against him by his colleagues. Despite exhaustive attempts to rework Plaintiff's responsibilities, including route reassignments and the shifting of deliveries to other drivers, Plaintiff consistently failed to complete his route. Warehouse employees on both shifts as well as other drivers became understandably (and by

9

Plaintiff's own admission, vocally) embittered by Plaintiff's failure to do his job. (Local Rule 56(a)1, paras. 95-100). Under such circumstances, Plaintiff cannot demonstrate any "pretext" or any "causal connection" between his termination and his exercise of rights under the workers' compensation statute.

Accordingly, summary judgment in favor of Defendant on Count One should be granted.

**C.    Plaintiff Has Failed to Establish a Claim For Disability Discrimination Pursuant to CFEPA, Conn. Gen. Stat. Section 46a-60.**

Defendant is entitled to summary judgment on Count Two of Plaintiff's Complaint because he has failed to establish a claim for disability pursuant to CFEPA, Conn. Gen. Stat. Section 46a-60.

Conn. Gen. Stat. Section 46a-60(a)(1) provides that it is discriminatory for "an employer . . . to discharge from his employment any individual . . . because of the individual's . . . physical disability, including, but, not limited, to blindness."

CFEPA claims are analyzed by reference to the same framework applicable to federal discrimination cases, including the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq. ("ADA") and Title VII. Brittell v. Department of Correction, 247 Conn. 148, 164 (1998); Levy v. Comm'n on Human Rights and Opportunities, 236 Conn.

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 02702

96, 103-04 (1996).  More specifically, the <u>McDonnell Douglas</u> burden-shifting analysis

applies.  <u>Levy v. Comm'n on Human Rights and Opportunities</u>, supra., 236 Conn. at 107-

08 (1996);  <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 52 (2d Cir. 1998)(<u>McDonnell</u>

<u>Douglas</u> applicable to claims under the ADA).

Plaintiff thus bears the burden of establishing his prima facie case by showing that

(1) his employer is subjected to CFEPA; (2) he suffers from a disability within the meaning

of CFEPA; (3) he was otherwise qualified to perform the essential functions of his job; and

4) he suffered some adverse employment action because of his disability.  See <u>Heyman v.</u>

<u>Queens Village Comm. for Mental Health</u>, 198 F.3d 68, 72 (2d Cir. 1999)(describing same

elements for claim brought under the ADA).

Plaintiff cannot demonstrate either the third or fourth elements of his prima facie

case.[1] Chronic and persistently inadequate performance robs him of any opportunity to

demonstrate that he is otherwise qualified.  See, e.g., <u>Sirota v. New York Bd. of Educ.</u>, 283

A.2d 369, 370 (2001); See also <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 135 (2d Cir. 1997);

<u>Hendricks v. Nat'l Cleaning Contractor</u>, 1998 WL 26188, at *1, *3 (S.D.N.Y. Jan. 26,

1998)(attached hereto as Exhibit B).

_____

[1] While Defendant does not concede that Plaintiff has any disabilities within the
meaning of CFEPA, the court need not evaluate the issue in ruling on the instant motion.

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

For the reasons described above in Section III.B., Plaintiff was a persistently poor performer under the productivity formula. No evidence to contradict that claim is offered. Further, Defendant's judgment as to what constitutes the essential requirements of the job, including the number of cases, stops, and miles to be driven must be given substantial deference by the court. See D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998), citing Doe v. New York Univ., 666 F.2d 761, 776 (2d Cir. 1981). Plaintiff has not only failed to produce evidence to counteract that legal principle but has affirmatively acknowledged the fairness of the productivity formula.

The deference granted to an employer's judgment regarding the productivity requirements extends to its assessment of actual job performance. See Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985)(courts may rely upon the employer's assessment in determining whether job performance is satisfactory). As demonstrated above in Section III.C., Plaintiff offers no challenge to the formula itself, the raw data inputs, or the ultimate numerical rankings themselves. He does not contest and, in fact, admits the resentments and complaints of his colleagues.

In addition, a causal link between Plaintiff's termination and his alleged disabilities is non-existent. Plaintiff never requested nor had denied any requests for accommodations. (Local Rule 56(a)1, paras. 66-7, 75-7, 82, 127, 129, 131). Within two months of informing

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 02702

his employer of Hepatitis C, he was given full-time hours and benefits. (Local Rule 56(a)1,

para. 55, 62-3). As described more fully below in Section III.D., Plaintiff was given

substantially more FMLA leave time than he was entitled to and was permitted to utilize

accrued vacation time. (Local Rule 56(a)1, paras. 75-81).

Ultimately, it is essential that this Court not "ignore [ ] the larger sequence of events

and also the larger truth . . . [T]he employee who is already on notice of performance

problems should not be permitted to seek shelter in a belated claim of disability. Lanci v.

Arthur Anderson, LLP, 2000 WL 329226, at *1, *6 (S.D.N.Y March 29, 2000)(attached

hereto as Exhibit C), citing Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16-17, 17 n. 4

(1st Cir. 1997).  So belated is Plaintiff's attempt to harbor under the rubric of disability that it

comes only after he was separated.  While employed, Plaintiff never asserted that he was

disabled or sought accommodations for any reason, either in his response to his

performance evaluation and disciplinary reassignment in March 1999, or in the face of the

criticism and warnings of his superior and coworkers.

Such a topsy-turvy claim is further crippled by Plaintiff's utter failure to offer

evidence of pretext as a rebuttal to Defendant's legitimate, non-discriminatory reason for

termination.  As discussed above in Section III.B., Defendant's decision to separate

Plaintiff had nothing to do with any discriminatory motive and everything to do with his poor

13

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

job performance.  Accordingly, Defendant is entitled to summary judgment on Count Two of Plaintiff's Complaint.

### D.    Plaintiff Has Failed to Establish a Claim for Retaliation And/Or Discrimination Under the FMLA.

Plaintiff has failed to satisfy the prima facie elements of a claim under the FMLA for retaliation.  In addition, he has not provided, and cannot provide, any evidence which contradicts Defendant's proffered business justification for his termination.  Accordingly, summary judgment should be granted to Defendant on the Count Three of the Complaint.

Plaintiff's claim under the FMLA is essentially the same one he asserts for each discrimination claim - that he was terminated In retaliation for his exercise of rights under the FMLA.  Complaint, paras. 23-25.  While no specific section of the FMLA is cited by Plaintiff, retaliation claims are typically analyzed under 29 U.S.C. Section 2615(a)(2) which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000) (distinguishing between burden or denial of benefits under 29 U.S.C. Section 2615(a)(1) and claims brought under 29 U.S.C. Section 2615(a)(2) for retaliatory discharges); See also Merli v. Bill Communications, 2002 WL 424649, at *5 (S.D.N.Y. Mar. 18, 2002)(attached hereto as Exhibit D); Bond v. Sterling, Inc., 77 F.Supp.2d 300, 302 -03 (N.D.N.Y. 1999).

14

While the Second Circuit has not ruled on the framework applicable to an FMLA retaliation claim, "the [vast] majority of courts" both inside and outside this Circuit have found the Title VII anti-discrimination analysis and its attendant <u>McDonnell Douglas</u> burden-shifting scheme applicable because of the required examination of the employer's motivation. <u>Palma v. Pharmedica Communications, Inc.</u>, 2002 WL 32093275, at *4 (D.Conn. March 27, 2002)(attached hereto as Exhibit E); <u>LeBoeuf v. New York University Medical Center</u>, 2000 WL 1863762, at *2-3 (S.D.N.Y. Dec. 20, 2000)(attached hereto as Exhibit F); <u>Merli v. Bill Communications</u>, 2002 WL 424649, at *5-*6 (S.D.N.Y. Mar. 18, 2002); <u>Belgrave v. City of New York</u>, 1999 WL 692034, at *42 (E.D.N.Y. Aug. 31, 1999)(attached hereto as Exhibit G); <u>Bond v. Sterling, Inc.</u>, 77 F.Supp.2d 300, 302 -04 (N.D.N.Y. 1999); <u>Dumoulin v. Formica</u>, 968 F.Supp. 68, 71 (N.D.N.Y. 1997); <u>Strickland v. Water Works and Sewer Board of the City of Birmingham</u>, 239 F.3d 1199, 1207 (11th Cir. 2001); <u>King v. Preferred Technical Group</u>, 166 F.3d 887, 891 (7th Cir. 1999); <u>Hodgens v. General Dynamics Corp.</u>, 144 F.3d 151 (1st Cir. 1998); <u>Sanders v. The May Dept. Stores</u>, 2001 WL 578169 (E.D.Mo. 2001)(attached hereto as Exhibit H); <u>Baltuskonis v. U.S.</u>

15

Airways, Inc., 60 F.Supp.2d 445,448 (E.D.Pa. 1999), citing Churchill v. Star Enters, 183

F.3d 184 (3d Cir. 1999).[2]

In the instant case, Plaintiff's prima facie case requires proof that 1) he availed

himself of a protected right under the FMLA; 2) he was adversely affected by an

employment decision; and 3) that there is a causal connection between his protected

activity and the employer's adverse employment action. Bond, 77 F.Supp.2d at 303.

While Plaintiff has established the first two elements of his prima facie case, it is upon the

third that his claim runs aground.  A "causal connection" may be demonstrated either by

presentation of evidence of retaliatory animus or that the adverse employment action

closely followed in time the protected activity. Id., at 304; See also Manoharan v. Columbia

---

[2]  Those rulings which purportedly reject the application of the McDonnell Douglas framework to FMLA claims in favor of an "interference" analysis are, at best, irrelevant or, when read properly, are equally fatal to Plaintiff's claim.  Plaintiff does not assert that Defendant denied him FMLA benefits pursuant to 29 U.S.C. Section 2615(a)(1) and thus the application of an "interference" standard is improper.  O'Connor v. PCA Family Health Plan, Inc., supra, 200 F.3d at 1352; See also Merli v. Bill Communications, supra, 2002 WL 424649, at *5; Bond v. Sterling, Inc., supra, 77 F.Supp.2d at 302 -03. Those few cases which reject McDonnell Douglas in favor of the "interference" model for claims under 29 U.S.C. Section 2615(a)(1) still require proof that the employer was motivated by the employee's participation in protected activity. Darboe v. Staples, Inc., 243 F.Supp.2d 5, 6 (S.D.N.Y. 2003), citing Mann v. Mass. Correa Elec. J.V., 2002 WL 88915, at *6 (S.D.N.Y. Jan. 3, 2002)(attached hereto as Exhibit I).  Regardless of the analytic framework used, therefore, Plaintiff's evidence fails to support an inference that Defendant acted with an impermissible retaliatory or discriminatory motive.

16

Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.1988); Hodgens v. Gen.

Dymanics Corp., 144 F.3d 151, 160- 61 (1st Cir.1998); Hillman v. Hamilton College, 1998

WL 166827, at *7 (N.D.N.Y. 1998)(attached hereto as Exhibit J).

      Plaintiff offers no tangible evidence of a retaliatory animus but instead seeks to

prove a "causal connection" entirely on the basis of the temporal proximity between his use

of FMLA leave time and his termination.[3]

      For several painfully conspicuous reasons, proximity alone is inadequate to support

Plaintiff's claim of retaliatory discharge.  That is because an affirmative causal link between

the adverse employment action and the protected activity is not presumed but must be

proved in its own right.  Hite v. Biomet, Inc., 53 F.Supp.2d 1013, 1019 (N.D.Ind. 1999).  "If

timing alone were sufficient, any employer who granted leave under the FMLA would

thereafter have its hands tied regarding discipline of that employee."  Id., citing McCown v.

UOP, Inc., 1995 WL 519818, at *7 (N.D.Ill. Aug. 30, 1995)(attached hereto as Exhibit K).

"The FMLA does not immunize an employee from legitimate disciplinary action by [his]

employer for reasons unrelated to the employee's FMLA leave."  Id. at 304.  "An employee

---

    [3]  Plaintiff proffers no discriminatory comments or actions other than the termination
itself.  Thus limited, Plaintiff's only evidence of a retaliatory animus is rank speculation
about or his own impressions of why he was terminated.  (Local Rule 56(a)1, para. 125).
Such intangible musings are wholly inadequate to satisfy his prima facie case. Bond, 77
F.Supp.2d at 304-05.

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." Gunnell v. Utah Valley State College , 152 F.3d 1253, 1262 (10th Cir. 1998).

As describe above in Section III.B,  Plaintiff's use of FMLA time offers no sanctuary from his dreadful performance.  Plaintiff's performance, as measured by admittedly non-discriminatory criteria, was the worst in the company and lagged behind even that of newly-hired and inexperienced drivers. (Local Rule 56(a)1, paras. 37, 50-1, 83-124).  Under such circumstances, Plaintiff cannot demonstrate any "causal connection" between his termination and his use of FMLA leave time. [4]

In addition, the sequence between Plaintiff's use of FMLA time and his ultimate termination is far too tenuous to support a claim.  Plaintiff ran out of FMLA leave on July 19, 2000.  The original decision to terminate Plaintiff along with his poorly performing colleagues was not made until October, 2000, three months after his leave expired.  That decision was reexamined in January, 2001, and based upon Plaintiff's continued failings, was finally taken on February 2, 2001.  Thus, over six months elapsed from the time

_____

[4]  As repeatedly stated before, Plaintiff's absences for any reason, including FMLA leave time, were not counted under and did not disadvantage Plaintiff under the productivity formula.  (Local Rule 56(a)1, paras. 48, 70).

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 Center Street  •  Manchester, CT 06040  •  (860)646-5606  •  Juris No. 02702

Plaintiff exhausted his FMLA leave and his termination. Such a gap is facially inadequate to satisfy Plaintiff's prima facie obligation to establish a "causal connection". Hite 53 F.Supp.2d at 1019 (10 weeks between use of FMLA and termination insufficient in itself to establish retaliatory motive); Bond, 77 F.Supp.2d at 304 (2 weeks between use of FMLA inadequate and termination inadequate to establish "causal connection").

Finally, Defendant's voluntary grant of an additional month of leave is a logical and factual catastrophe for Plaintiff's claim. It is fundamentally "counterintuitive" for Worldwide to have retaliated against the Plaintiff for exercising his FMLA rights while also declining to compel his return to work on July 20, 2000, as it could have under the FMLA, then voluntarily extending benefits thereafter to August 20, 2000, when it had no legal obligation to do so. Hite, 53 F.Supp.2d at 1019. In fact, the provision of unrequired leave is "counter-evidence of any causal connection" required to support a prima facie case of retaliation. Id., citing Johnson v. Univ. of Wis.-Eau Claire, 70 F.3d 469, 480 (7th Cir. 1995); See also Greene v. Dialysis Clinic, Inc., 159 F.Supp.2d 228 (W.D.N.C. 2001)(Additional FMLA benefits antithetical to retaliation claim); Keeshan v. Home Depot, 2001 WL 310601 (E.D.Pa. Mar. 27, 2001)("Causal connection" in FMLA retaliation claim defeated, in part, by employer's granting of one week of additional benefits)(attached hereto as Exhibit L).

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

Assuming _arguendo_ that Plaintiff satisfies all the elements of his prima facie case, Defendant has met its burden by proffering a nondiscriminatory reason for its employment decision - Plaintiff's long history of poor performance. Thus, the burden shifts to Plaintiff to prove that Defendant's proffered reason was merely pretext - "that Defendant's actions were motivated by unlawful discrimination under the FMLA." _Bond_, 77 F.Supp.2d at 304.

Plaintiff's failures in connection with the pretext portion of his claim are even worse than those associated with his prima facie case. Evidence of pretext "'may be demonstrated either by presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more." _LaFond v. Gen. Physics Servs. Corp._, 50 F.3d 165, 174 (2d Cir. 1995). Falsity requires Plaintiff to provide some tangible evidence that Defendant's evaluation of his performance was "so lacking in merit as to call into question its genuineness." _Bond_, 77 F.Supp.2d at 304, citing _Dister v. Continental Group, Inc._, 859 F.2d 1108, 1116 (2d Cir. 1988). For the reasons discussed above, Plaintiff cannot do so.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Third Count.

**E.    Plaintiff Has No Individual Cause of Action Pursuant to Conn. Gen. Stat. Section 31-128g.**

Summary judgment on Count Four of Plaintiff's Complaint must be granted because Plaintiff has no private cause of action under Conn. Gen. Stat. Section 31-128g for

20

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

Defendant's failure to provide him his personnel file.  Thompson v. Bridgeport Hospital, 2001 WL 823130 (Superior Court of Connecticut, June 22, 2001), (attached hereto as Exhibit M).

As an initial matter, Plaintiff's claim improperly identified Conn. Gen. Stat. Section 31-128a as the basis for his claim.  That statutory section of the Personnel Files Act contains only definitions as used in Chapter 563a of the Connecticut Statutes.  It is only under Conn. Gen. Stat. Section 31-128g that an employee is given any avenue to access a personnel file.

Conn. Gen. Stat. Section 31-128g provides, in pertinent part:

Each employer shall, within a reasonable time after receipt of a written request from an employee, provide such employee with a copy of all or part of his personnel file.

That provision, however, does not create a private cause of action to remedy an employer's failure to provide a copy of the personnel file.  First, [a]ccording to the legislative intent of the statute, if an employer fails to comply with an employee's request for a copy of his or her file, the employee's remedy is to complain to the Labor Commissioner pursuant to General Statutes Section 31-2(a). Id., citing Turzer v. Connecticut National Bank, 5 Conn. L. Rptr. 119 (October 10, 1991) (attached hereto as Exhibit N).

"In addition, the doctrine of primary jurisdiction militates against the court taking jurisdiction [over alleged violations of Section 31-128g] . . . It is well established that resort

21

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

to the administrative process is generally a prerequisite to involving the jurisdiction of the

court . . . Ordinarily, a court should not act upon subject matter that is peculiarly within the

agency's specialized field without giving the agency an opportunity to apply its expertise. . .

The doctrine of primary jurisdiction militates in favor of this claim going first to the Labor

Commissioner.  Id., citing Duncan v. Junior Achievement, Inc., Superior Court, Judicial

District of Fairfield at Bridgeport, Docket No. 335878 (January 27, 2000); Turzer v.

Connecticut National Bank, supra., 5 Conn. L. Rptr. 119.

> **F.**    **Plaintiff's Claim For Economic Damages Resulting From His Termination Is Precluded And/Or Estopped by His Acceptance of Benefits Pursuant to Conn. Gen. Stat. Section 31-308a.**

Having twice applied for and accepted benefits in 2001 under Conn. Gen. Stat.

Section 31-308a, Plaintiff's claim for economic damages stemming from his termination is

precluded and/or estopped.

Conn. Gen. Stat. Section 31-308a provides, in relevant part, that:

[t]he commissioner . . . may award additional compensation benefits for such partial permanent disability equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position to the position held by such injured employee prior to his injury.

Payments made pursuant to that section are compensation for the loss of earning

power caused by a work-related injury.  "Partial incapacity benefits are available when the

employee is 'unable to perform some employment, but [is] unable to fully perform his or her

22

customary work . . . [P]artial incapacity benefits are available when an actual wage loss has resulted from an injury, providing a wage supplement for the difference between the wages the worker would have earned, but for the injury, and the wages the worker currently is able to earn.'" Rayhall v. Akim Company, Inc., 263 Conn. 328, 350 (2003), citing Conn. Gen. Stat. Section 31-308a.

Claiming that his back injuries prevented him from performing his customary trade as a truck driver, Plaintiff applied for and accepted wage payments from March 20, 2001 to April 30, 2001 and tuition expenses for the 2001-2003 school year to attend New England Technical Institute in Hamden, Connecticut. (Local Rule 56(a)1, para. 132). Receipt of those payments precludes and/or estopps Plaintiff from claiming in the instant case that he was qualified for or capable of performing his job with Worldwide and thus estopps him from claiming any damages flowing from his termination. See, e.g., Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 598, 600-605 (9th Cir. 1996), discussed below. Acceptance of benefits under Conn. Gen. Stat. Section 31-308a is an admission by Plaintiff that he was not physically able to continue his employment with Worldwide and is, for all intents and purposes, a concession that he was unable to perform his job there.

23

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702

In <u>Al-Khatatbeh v. Aramark Educ. Resurces, Inc.</u>, 2002 WL 31466486, *5 (D.Or

Mar. 21, 2002)(attached hereto as Exhibit O), the court granted summary judgment to an

employer on a claim for workers' compensation retaliation reasoning that:

> Even if plaintiff had established a question of fact as to whether she suffered an
> adverse employment action, plaintiff's claim would fail because she has failed to
> establish a question of fact as to whether she was qualified for a position with
> defendant. A plaintiff is estopped from claiming that she was qualified for a position
> where she stated in a previous workers' compensation hearing that she was unable
> to work. <u>Rissetto v. Plumbers and Steamfitters Local</u>, 343, 94 F.3d 598, 600-605
> (9th Cir. 1996. In *Rissetto,* the court found that because a plaintiff awarded benefits
> under workers' compensation obtains money on the basis of an assertion that she
> has an inability to work, she cannot later claim she was performing her job
> adequately and thus recover money twice on these inconsistent opinions. Similarly,
> then, plaintiff should not be able to recover workers' compensation benefits on the
> basis of her assertion that she has an inability to work, and now claim she deserves
> damages as she was qualified for a position with defendant.

The instant case offers no distinction and represents the same attempt at double-dipping.

In <u>Mitchell v. Washingtonville Cent. School Dist,</u>, 190 F.3d 1, 6-7 (2d Cir. 1999), the

court concluded that the plaintiff's fundamentally inconsistent statements regarding work

capacity made to an administrative agency warranted the application of estoppel. "To rule

otherwise might leave the implication that someone who feels himself in need of further

income is free to misrepresent important information to the [an administrative agency]." <u>Id.</u>

at 6. Likewise, no amount of explanation can reconcile Plaintiff's solicitation of income on

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 02702

the basis of his inability to work as a driver with the instant claim for damages resulting from his termination as a driver.

Accordingly, Defendant is entitled to summary judgment on the grounds that Plaintiff's acceptance of benefits pursuant to Conn. Gen. Stat. Section 31-308a precludes and/or estopps his assertion that he suffered any wage or other economic losses because of his termination.

## IV.    CONCLUSION

For the foregoing reasons, and based on the facts set forth in Defendant's Local Rule 56(a)1 submission filed herewith, Defendant's motion for summary judgment as to all of Plaintiff's claims must be granted, and a final judgment entered in favor of Defendant.

DEFENDANT

By: _____
        Marc P. Mercier
        Beck & Eldergill, P.C.
        447 Center Street
        Manchester, CT 06040
        (860) 646-5606
        Fed Bar No: ct10886

25

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 Center Street • Manchester, CT 06040 • (860)646-5606 • Juris No. 02702

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this 13th day of November, 2003, to the following parties:

Henry F. Murray
Gregg D. Adler
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT   06105-2922

_____
Marc P. Mercier

W W W.Callahan\MoSumJud11-03.pld

26

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET  •  MANCHESTER, CT 06040  •  (860)646-5606  •  JURIS NO. 02702