**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| MICHAEL CALLAHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV213 (CFD) |
| | : | |
| v. | : | |
| | : | |
| WORLDWIDE WINES, INC | : | |
| Defendant. | : | |
| | : | JANUARY 28, 2004 |

**PLAINTIFF'S LOCAL RULE 56(a) (2) STATEMENT**

A.    Plaintiff's Response To Defendants' Local Rule 56(a)(1) Statement

        In accordance with Local Rule 56(a)(2), plaintiff Michael Callahan hereby

responds to the Defendants' Statement of Undisputed Material Facts.

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Admitted.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.

- 2 -

13.   Admitted.

14.   Admitted.

15.   Admitted.

16.   Admitted.

17.   Admitted.

18.   Admitted.

20.   Admitted.

21.   Admitted.

22.   Admitted.

23.   Admitted.

24.   Admitted.

25.   Admitted.

26.   Admitted.

27.   Admitted.

28.   Admitted.

29.   Denied to the extent that it is required if they finish their route early and it is
      within their guaranteed 40 hour work week.  (Deposition of Michael Callahan,
      September 29, 2003, attached hereto as Exhibit 1, p. 72 and hereinafter
      "Callahan Dep. p. ___").

30.   Admitted.

31.   Admitted.

32.   Admitted.

33.   Admitted.

34.   Admitted.

35.   Admitted.

- 3 -

36.   Admitted.

37.   Denied.  (Callahan Dep. pp. 47-49; Affidavit of Michael Callahan, January 28, 2004, ¶¶ 21, 22, attached hereto as Exhibit 2,  hereinafter "Callahan Aff. ¶ _".)

38.   Denied.  (Callahan Dep. p. 69 ; Callahan Aff. ¶22.)

39.   Denied to the extent that Callahan only shopped during the work day on his company authorized lunch hour.  (Callahan Dep. pp. 48-50.)

40.   Admitted to the extent that the defendant hired private investigators but denied that there any "disappearances" to investigate. (Callahan Dep. pp. 48-50; Deposition of Gary McCabe, August 18, 2003, pp. 69-76, attached as Exhibit 3 hereinafter McCabe Dep. p. __").

41.   Denied. Any surveillance was negative with respect to "disappearances" from the plaintiff's route.  (McCabe Dep. pp. 69-76; Special Investigations & Recovery Report, November 23, 1998, attached as Exhibit 9 to defendant's Local Rule 56(a) Report.)

42.   Admitted.

43.   Admitted.

44.   Admitted.

45.   Admitted.

46.   Admitted.

47.   Admitted.

48.   Admitted.

49.   Admitted.

50.   Denied.  (Callahan Aff. ¶14.)

51.   Denied.  (Callahan Aff. ¶¶ 14, 15.)

52.   Denied.  ( Callahan Aff. ¶ 15.)

53.   Admitted.

54.   Admitted.

55.   Admitted.

- 4 -

56.    Denied. (Callahan Dep. p. 100.)

57.    Admitted.

58.    Denied. (Callahan Dep. p. 100).

59.    Admitted.

60.    Admitted.

61.    Admitted.

62.    Admitted.

63.    Admitted.

64.    Admitted to the extent that warehouse work fell within the 40 hour per week
       guarantee. (Callahan Dep. p. 72; Callahan Aff. ¶¶6, 9.)

65.    Admitted.

66.    Admitted.

67.    Admitted.

68.    Admitted.

69.    Admitted.

70.    Admitted.

71.    Admitted.

72.    Admitted.

73.    Admitted.

74.    Denied. (Callahan Aff. ¶20.)

75.    Admitted.

76.    Admitted.

77.    Admitted.

78.    Admitted.

- 5 -

79.    Admitted.

80.    Admitted.

81.    Admitted.

82.    Admitted.

83.    Denied.  (Callahan Aff. ¶18.)

84.    Denied.  (Callahan Aff. ¶¶12, 17.)

85.    Denied.  (Callahan Aff. ¶17.)

86.    Denied.  (Callahan Aff. ¶13.)

87.    Denied.  (Callahan Aff. ¶13.)

88.    Denied.  (Callahan Dep. pp. 100-102.)

89.    Denied.  (Callahan Aff. ¶13.)

90.    Denied.  (Callahan Aff. ¶13.)

91.    Denied.  (Callahan Aff. ¶¶17, 18, 12.)

92.    Denied.  (Callahan Aff. ¶13.)

93.    Denied.  (Callahan Aff. ¶¶10, 13.)

94.    Denied.  (Callahan Dep. pp. 100-102.)

95.    Denied.  (Callahan Aff. ¶13.)

96.    Denied.  (Callahan Aff. ¶13.)

97.    Admitted.

98.    Admitted.

99.    Denied.  (Callahan Aff. ¶¶13, 18, 19.)

100.    Denied.  (Callahan Aff. ¶13.)

101.    Denied.  (Callahan Dep. pp. 100-102.)

102.    Denied.  (Callahan Aff. ¶13.)

- 6 -

103.    Denied.  (Callahan Aff. ¶13.)

104.    Denied.  (Callahan Aff. ¶13.)

105.    Denied.  (Callahan Aff. ¶13.)

106.    Denied.  (Callahan Aff. ¶18; Callahan Dep. pp. 29-30, 36-37, 79, 87, 113, 124-125, 156-157).

107.    Denied.  (Callahan Aff. ¶30.)

108.    Denied.  (Callahan Aff. ¶30.)

109.    Denied.  (Callahan Aff. ¶30.)

110.    Denied.  (Callahan Aff. ¶29.)

111.    Denied.  (Callahan Aff. ¶¶30, 31.)

112.    Admitted.

113.    Admitted.

114.    Admitted.

115.    Admitted.

116.    Admitted.

117.    Denied.  (Callahan Aff. ¶19.)

118.    Admitted.

119.    Denied.  (Callahan Aff. ¶31.)

120.    Denied.  (Callahan Aff. ¶¶ 19, 20.)

121.    Denied.  (Callahan Aff. ¶31.)

122.    Denied.  (Defendant's Rule 56(a) Report, Exhibits 21, 22.)

123.    Denied.  (Callahan Aff. ¶31.)

124.    Denied.  (Callahan Aff. ¶¶30, 31.)

125.    Admitted.

126.   Denied.  (Callahan Aff. ¶¶24 - 30.)

127.   Admitted.

128.   Denied.  (Callahan Aff. ¶¶24-30.)

129.   Admitted.

130.   Denied.  (Callahan Aff. ¶¶24-30.)

131.   Admitted.

132.   Admitted.


B.     Plaintiff's Local Rule 56(a)(2) Statement As To Those Material Facts In Dispute

In accordance with Local Rule 56(a)(2), plaintiff Michael Callahan hereby makes the following statement of material facts as to which there is a genuine dispute:

1.     Michael Callahan worked for Worldwide Wines, Inc. as a delivery truck driver for nearly eighteen years.  He first worked for Worldwide from 1980 until 1986. He left his employment with the company at that time to pursue work and living opportunities in Florida.   He returned to Connecticut in 1988 and was re-employed by the company in September, 1988.   He worked continuously, from that time, for Worldwide until his termination on February 1, 2001.  Callahan Aff. ¶2.


2.     For a period of time from 1996 until December, 1999, Callahan was on a less than full time schedule with Worldwide due to his obligation to return to the warehouse no later than 5:00 p.m. each day in order to pick up his children at child care.  Callahan had legal custody of his children.  In December, 1999 he requested to return to full time, or a 40 hour per week guarantee, since he no longer was required to get his children at child care by 6:00 p.m.  Callahan Aff. ¶¶8, 16.

- 8 -

3.      As a delivery driver for the defendant, Callahan's job was to delivery wine to the company's customers on a designated delivery route.  He worked four, ten-hour days, from Tuesday though Friday.  The work involved a great deal of lifting of heavy cases and pushing cases loaded on hand trucks.  Callahan Aff. ¶¶3, 4.

4.      In May, 1998, Callahan injured his lower back in the course of his employment, notified the defendant and then submitted a workers' compensation claim with the defendant's insurance carrier.  As a result of that injury, the plaintiff lost seven (7) days of work and required another three (3) days of restricted activity.  In May, 1999, Callahan re-injured his lower back and processed another claim for workers' compensation.  That injury resulted in a loss of ten (10) days of work.  In 2000 Callahan suffered a series of additional injuries at work resulting in a substantial amount of lost time from his job.  On January 18, 2000 he injured his ankle at work, filed a workers' compensation claim and lost fifteen (15) days from work.  On May 19, 2000, Callahan suffered a cervical strain at work causing him to miss another seven (7) days and to file another workers' compensation claim.  Finally, on November 22, 2000, Callahan re-injured his lower back and lost the balance of the work year or another twenty-one (21) days from work.  He did not return to work until January 8, 2001, losing an additional four days of work in 2001.  In total, Callahan lost sixty-four (64) days from work due to workers' compensation injuries from May, 1998 through December, 2000 with forty-three (43) of those absences in the year 2000.  Callahan Aff. ¶25; Exhibit 4.

5.      Prior to his last back injury, Callahan informed Gary McCabe, the defendant's comptroller, on or about August 20, 2000, that he was rated as 10% disabled due to his back injuries, by the Workers' Compensation Commissioner on August 16, 2000.    Callahan Aff. ¶26.

- 9 -

6.    In October, 1999, Callahan informed the defendant that he had been diagnosed as having Hepatitis C, a chronic disease that impairs liver function.  As a result of this diagnosis, Callahan was required to begin treatment in February, 2000. Drug therapy for this disease makes it impossible to continue working during treatment requiring Callahan to request time off the job under the Family Medical Leave Act.  The plaintiff was out on FMLA leave for treatment from February 14 through March 17, 2000 and again for a second round of therapy from June 5 through August 6, 2000.  The defendant does not provide for any salary continuation during FMLA leave but does continue to provide group medical benefits.  Upon the completion of his FMLA leaves for Hepatitis C treatments, the plaintiff requested to take his two-week paid vacation and returned to work full time on August 20, 2000.  Callahan Aff. ¶24.

7.    Because of his various workers' compensation claims and time off on FMLA leave, Callahan actually worked for Worldwide Wines for no more than twenty (20) weeks during th year 2000.  Callahan Aff. ¶29.

8.    Four weeks after returning from this most recent workers' compensation injury, Callahan was informed by McCabe, on February 1, 2001, that he was being terminated for "poor performance."  On that same day, the defendant terminated two other drivers, Greg Mihalko and Roger Watson.  At the time of their firings, Callahan, Mihalko and Watson had the highest number of days lost to workers' compensation injuries among Worldwide Wines' employees for the past three years.  Besides Callahan's 64 days[1] Watson had lost 35 days to injuries and Mihalko lost 21 days.   The

---

[1]  Besides the 60 days of lost time and three (3) days of restricted duties showing on the OSHA Logs for 1998 - 2000, Callahan also was out on workers' compensation for the first four (4) days of the 2001 work year.  Because Worldwide wines operates on a ten hour day, Callahan's 64 days of injuries amounted to 640 compensated lost-time

- 10 -

next nearest employees were Munir Odeh with twelve (12) days lost to a workers'
compensation injury in 2000 and Billy Schwabe who lost ten (10) days in 1999.
Callahan Aff. ¶31; Exhibit 5.

9.     From the time he returned to work in August, 2000 until the date of his
termination in February, 2001, Callahan was not counseled by anyone in management
of the company regarding his performance or productivity as a driver.  In fact Callahan
had no discussions with anyone in company management or with any other non-
managerial employees regarding his performance or productivity at any time after his
return to full time status in December, 1999.  Callahan Aff. ¶¶10 -15.

10.     While working a reduced schedule due to child care responsibilities from
1996 to December, 1999, Callahan had, on occasion, had discussions with McCabe
and warehouse employees Felix Butot and Tony Pelosi regarding undelivered orders he
returned on his truck.  During those discussions Callahan and Pelosi disagreed about
causes for failing to make some deliveries with Callahan attributing the problem to
inefficiency from poor route design which made him continually double back over the
same territory during the course of a day.  Pelosi and Butot, as evening shift warehouse
employees, were responsible for route design and loading the delivery trucks for the
next day.  Callahan Aff. ¶¶10-15.

11.     Throughout his entire tenure with Worldwide Wines Callahan never
received any oral or written warnings regarding his performance or productivity.  The
only discipline Callahan received was a written warning for failing to return invoices in
1997 and 1999 and in October, 1998, Callahan also received a warning for "excessive

---

hours which is equivalent to 80 eight-hour days and 16 weeks of work.

absenteeism." Callahan was disciplined at that time for absences which included time off the job due to workers' compensation injuries. Callahan Aff. ¶¶10-15; Exhibit 6.

12.    While Callahan was aware that since late 1999 the company had been using some sort of a productivitity formula to track driver performance, no member of the defendant's management nor anyone else employed by the company had ever spoken specifically to Callahan about the formula, the rating of employee performance, or his own individual performance. Callahan Aff. ¶¶18-20.

13.    As a small employer, Worldwide Wines was sensitive to the rising cost of workers' compensation insurance premiums in 1998, 1999 and 2000. As comptroller for the corporation, McCabe kept track of cost issues as they related to operational expenses. One of those cost items he tracked was worker compensation expenses. During calendar year 2000, McCabe specifically tracked Callahan's use of both workers' compensation time and medical leave under the Family Medical Leave Act. At the same time McCabe was compiling this record with respect to Callahan's time off the job due to FMLA and workers' compensation leave, he became upset when he learned of the 10% disability rating for Callahan's back from the plaintiff and not directly from the insurance carrier. McCabe Dep. pp. 124-129, 137-139; Exhibit 15.

14.    By the time Callahan returned to work after his last workers' compensation injury, he had lost a total of nearly twenty six weeks of work during 2000 due to his FMLA leave and work-related injuries. Callahan Aff. ¶29.

15.    Michael Callahan suffers from a chronic physical impairment of his liver function due to Hepatitis C which required him to take FMLA leave for interferon treatment. Callahan Aff. ¶24.

16.    Michael Callahan suffers from a chronic physical impairment to his lower

- 12 -

back.  Callahan Aff. ¶¶25, 26.

17.     During the calendar year 2000, Worldwide Wines, Inc. deliberately tracked the amount of time Michael Callahan was absent from work due to his workers' compensation injuries and unpaid family medical.  Exhibit 15.

18.     The company was particularly concerned about employees, like Callahan, with multiple and repetitive workers' compensation injuries.  Exhibit 7; McCabe Dep. 127-129.

19.     Callahan was terminated because he had used so much FMLA leave and compensation time that he was at work less than six months during 2000.  Callahan Aff. ¶¶28-30.

20.     The decision to terminate Callahan was made after his last injury in November and December, 2000.  Callahan Aff. ¶33.

Respectfully submitted,

THE PLAINTIFF,


By:    _____
       Henry F. Murray ct17234
       Gregg D. Adler  ct05698
       Livingston, Adler, Pulda, Meiklejohn
         & Kelly, P.C.
       557 Prospect Avenue
       Hartford, CT 06105-2922
       (860) 233-9821


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Local Rule 56(a)(2) Statement has been sent by first-class, postage prepaid mail on this 28th day of January, 2004 to the following counsel of record:

Marc P. Mercier
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT 06040


_____
Henry F. Murray