UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL CALLAHAN : | CIVIL ACTION NO: 3:03CV213 (CFD) |
|    Plaintiff : | |
| : | |
| VS. : | |
| : | |
| WORLDWIDE WINES, INC. : | |
|    Defendant : | FEBRUARY 9, 2004 |

**DEFENDANT'S REPLY BRIEF RE: PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**A. Plaintiff's Affidavit Improperly Contradicts His Deposition and 56(a)(2) Admissions And Is Not Based Upon Personal Knowledge.**

Plaintiff's affidavit, Exhibit 3 of the 56(a)(2) statement, pervasively contradicts his deposition and should therefore be disregarded.[1] "A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997); Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987).

Plaintiff's affidavit, particularly paragraphs 13, 14, 18, and 22, attempts to repudiate deposition testimony admitting the possibility that Defendant questioned Plaintiff about his route disappearances, and repeatedly discussed with him his poor performance, including

---

[1] While not required in the context of a motion for summary judgment for the reasons described herein, Defendant's discussion of Plaintiff's affidavit and 56(a)(2) statement can simultaneously and/or alternatively be considered as a motion to strike pursuant to Fed.R.Civ.P. 56(e). See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988).

the disciplinary route change in March 1999, coworkers' complaints, failures to complete his route, and the necessity for reassigning his work to other drivers.  That Plaintiff, "upon reflection", has conveniently discovered a clearer memory is both irrelevant and improper.

Further, "[s]tatements in an affidavit ... are inappropriate [and may be disregarded] if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence."  <u>Epstein v. Kemper Ins. Companies</u>, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002); See also <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 71 (2d Cir. 2001).  Plaintiff's denial in his 56(a)(2) statement, paragraph 32 of the outcome of repeated performance evaluations and productivity rankings is directly refuted by the admissions in his affidavit, paragraphs 19 and 20, (and deposition) that he has no personal knowledge with which to challenge the adoption, methodology, or application of the productivity formula.

Plaintiff's affidavit further contradicts the denial of performance problems asserted in the 56(a)(2) statement, paragraphs 50-2, 86-7, 91-3, 95-6, 99.  Paragraphs 8-11 and 14 of the affidavit admit that prior to December, 1999, Plaintiff had performance problems which he disputed with management and coworkers.  As such, the affidavit is entirely improper.

**B. Plaintiff's 56(a)(2) Denials Are Conclusory and Unsubstantiated.**

Plaintiff's 56(a)(2) denials are either wholly unsupported or self-contradicting conclusions.  Despite the "denial" of paragraph 74, the lawfulness of Defendant's adoption, preparation, and application of the productivity formula is not challenged.  Plaintiff's 56(a)(2) statement, paragraphs 35-6, 46-49, 68-73; Plaintiff's affidavit, paragraph 20.  Nor

2

does Plaintiff, despite his perfunctory "denials" in the 56(a)(2) statement, paragraphs 37, 41-7, contest the fact or motive behind Defendant's 1998 surveillance. Plaintiff's 56(a)(2) statement, paragraphs 35-6, 46-49, 68-73.

The "denials" of the 56(a)(2) statement, paragraphs 50, 117, 120 and 122 are equally ineffective. As described above, Plaintiff has no means with which to assail the comparison of his performance to novice drivers, or the relative rankings prepared weekly and annually by Mr. Kociszewski. Plaintiff's 56(a)(2) statement, paragraphs 42-9, 59-61, 115-6, 118.

Plaintiff's denial in his 56(a)(2) statement, paragraphs 50-2, 83-96 are likewise hollow. His affidavit admits every material fact of the reassignment, including an involuntary switch to the easiest route in the company, while repudiating only his prior testimony that Defendant may have informed him it was caused by poor performance. Plaintiff's Exhibit 2, paragraph 14; Plaintiff's 56(a)(2) statement, paragraphs 44-5.

So also with Plaintiff's claim that he cannot now recall complaints despite admitting that his coworkers had first hand knowledge of his performance, the responsibility to reassign his unfinished work to other employees, and had discussed directly with Plaintiff, prior to December, 1999, their observations that he was performing poorly. Plaintiff's 56(a)(2) statement, paragraphs 12, 14, 16-7, 19-20, 65. In fact, Plaintiff does not rebut at all the affidavits from his colleagues describing a constant stream of complaints up to the time of Plaintiff's termination.

Equally unfounded are Plaintiff's "denials" of the timing of his termination contained

3

in the 56(a)(2) statement, paragraphs 110-11, 119-21, 123-4.  Plaintiff offers not an iota of evidence with which to contradict Defendant's assertions that it decided in October, 2000 to terminate Mr. Mihalko, Mr. Watson and Plaintiff effective January and February, 2001 respectively.  Nor does he provide any evidence with which to contradict Defendant's evaluation of Mihalko's and Watson's performance.  Plaintiff merely says they are not so.

Plaintiff's attempt to recast the facts of his case is so brazen that he cites his deposition admitting Defendant's sympathetic reaction to the diagnosis of Hepatitis C as the basis for his denial of the same in the 56(a)(2) statement, paragraphs 56, 58.

Finally, Plaintiff's argument that his case is based on more than temporal proximity is refuted by the admission in his 56(a)(2) statement, paragraph 125.

Under such circumstances, Plaintiff's 56(a)(2) denials should be disregarded.

**C. Plaintiff's Affirmative Allegations in His 56(a)(2) Statement Contradict his Admissions and are Conclusory.**

Plaintiff's affirmative 56(a)(2) allegations are also either repudiations of his deposition or are so wildly speculative as to be wholly improper.

As described above in Section B, Plaintiff's affirmative contentions in the 56(a)(2) statement, paragraphs 9-12, and 20 challenging the timing of Defendant's decision to terminate or the fact and substance of the discussions, reviews, and complaints about his performance are directly at odds with his deposition and affidavit, and are unaccompanied by any specific factual citation.

So also with Plaintiff's affirmative paragraphs 5, 13 and 18.  Plaintiff's affidavit,

paragraph 26 does not, as claimed in the 56(a)(2) affirmative statement paragraph 5, refer to any knowledge by Mr. McCabe of Plaintiff's permanency rating.  Nor does Mr. McCabe's deposition reflect, as claimed, any negative reaction to Plaintiff's permanency rating, or any attempt by Defendant to monitor any employee's injuries or use of workers' compensation, let alone Plaintiff's.  Indeed, Plaintiff admits in the 56(a)(2) statement, paragraph 10 and Mr. McCabe denied in his deposition on pages 124, 127-9 that he had knowledge of or responsibility for the rates charged for workers' compensation coverage or engaged in any scheme to monitor Plaintiff.  Plaintiff's Exhibit 3, pages 127-8; Deposition Transcript of Gary McCabe, page 124 attached hereto as Exhibit 1.  Plaintiff cannot transform vague and hypothetical questions about Defendant's generalized concern with overhead into evidence of retaliation.

Equally conclusory are Plaintiff's allegations in paragraph 19 about Defendant's retaliatory or discriminatory motives.  Not a single factual citation, other than Plaintiff's belief, is offered.  Thus, Plaintiff's 56(a)(2) affirmative allegations are improper and should be disregarded by the court.

**D. Plaintiff Has Insufficient Evidence to Support His Workers' Compensation Retaliation Claim.**

Plaintiff has neither evidence of a causal connection between his termination and his exercise of rights to workers' compensation nor a basis for challenging as pretextual Defendant's proffered reason.

"Perfunctory statements, vague charges and conclusory allegations made in an

5

opposition brief are not enough to defeat a motion for summary judgment." In re Corporate Food Management, Inc., 223 B.R. 635, 647 (Bkrtcy E.D.N.Y. 1998), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff ineffectively attempts on pages 13 through 19 of his brief to manufacture an inference of retaliation.  For example, Plaintiff suggests that Defendant's inadvertent inclusion in the October, 1998 absenteeism warning of a single injury-related absence from June, 1998 is evidence of retaliation.  No such inference, however, can be made where Plaintiff's discipline came four months after the absence and was based upon eight other uncontested absences.  Were that not enough, Plaintiff's claim is utterly defeated by Defendant's subsequent conduct in reinstating Plaintiff to full-time work in December, 1999 despite a second workers' compensation claim in May, 1999, and voluntarily granting additional FMLA leave in July, 2000 after Plaintiff's third workers' compensation claim in January, 2000.

Indeed, Plaintiff ultimately relies for proof not upon actions taken against him (there are none but termination) but on his speculation about those taken against Mr. Watson and Mr. Mihalko.  Plaintiff contends his coworkers were fired for discriminatory reasons despite any a lack of personal knowledge or supporting affidavits.  Defendant's treatment, however, of Mr. Watson and Mr. Mihalko, including the verbal warnings and multiple disciplinary route reassignments described in Defendant's Exhibit 4, paragraphs 32, 39-40, Defendant's Exhibit 11, and Plaintiff's Exhibit 3, pages 141-44, is entirely consistent with that meted out to Plaintiff.  All three were terminated only after failing to respond to multiple opportunities

to improve, including route reassignments.

Likewise baseless is Plaintiff's challenge to the timing of his termination. Although no documents are factually or legally required to exist, Plaintiff denies Defendant's October, 2000 meeting on the singular basis that no written records exist. Such an allegation is ultimately meaningless in light of the fact that Plaintiff cannot demonstrate any differential treatment. Defendant never had, or deviated from, a practice of making such records for any employee.

The claims made in Plaintiff's brief, pages 19-25, with respect to pretext are breathtakingly outrageous. While Plaintiff formally drops his claim under the personnel files act, he nevertheless urges the court to ignore completely Defendant's documentary evidence of Plaintiff's poor performance on the novel but completely bogus theory that it cannot be used because is should have been turned over as part of Plaintiff's personnel file requests. That such an extreme proposition is advanced without any legal citations is not surprising. Plaintiff seeks a remedy he couldn't possibly receive under the Personnel Files Act, the Federal Rules, or any other relevant law.

Defendant's inadvertent failure to provide to him a copy of his personnel file is relevant only to Plaintiff's scurrilous accusation that Defendant manufactured the documentation of poor performance. In addition to advancing not an iota of affirmative evidence in support of the claim, Plaintiff's 56(a)(2) statement admits the exact opposite. Plaintiff acknowledges that the formula was adopted for non-discriminatory reasons, utilized objective GPS technology, and was neutral on its face and in its application to him. Plaintiff

does not contest the mathematics of or the data used in the formula, the fact that the weekly productivity sheets were prepared contemporaneously with and posted during his tenure, or even the relative rankings themselves.  Plaintiff's 56(a)(2) statement, paragraphs 42-9, 59-61, 115-6, 118.

Plaintiff instead asserts the wholly irrelevant points that he cannot understand some of the forms, that different sets of data may have been used, or that the weekly productivity sheets were not recorded in ".pdf" format.

Plaintiff's attempt in pages 13 and 14 of his brief to contort Defendant's recordation of his FMLA leave time is truly bizarre – Defendant was required to distinguish between workers' compensation and FMLA time so as to ensure that Plaintiff was provided appropriate leave.  The outcome of the recordkeeping which Plaintiff now challenges as retaliatory was more leave beyond Plaintiff's legal entitlement.

Ultimately, Plaintiff does not contest in any meaningful way his abysmal performance when compared to both novices and experienced drivers, the observations and complaints of his colleagues, or Defendant's repeated attempts to remedy his failings.  He simply denies the logic of his own deposition or baldly refuses to accept the outcome of Defendant's productivity formula.

**E. Plaintiff's Brief Fails to Address Defendant's FMLA Arguments.**

In addition to the deficiencies described above, Plaintiff's brief, pages 25 through 28, fails to respond at all to the lack of temporal connection between Plaintiff's use of FMLA time in July, 2000 and his ultimate termination in February, 2001 or the fatal effects of

receiving extra FMLA leave.  Plaintiff flippantly suggests on page 26, footnote 23, that the additional leave should be ignored because "defendant provided no more [leave] than was required by state law."  No claim, however, has been or could be made that Plaintiff was entitled to leave under state law.  Plaintiff admits that Defendant did not have enough employees to be covered under Connecticut law.  Plaintiff's 56(a)(2) Statement, paragraph 6; See also Conn. Gen. Stat. Section 31-51kk (only employers with seventy-five or more employees are covered.).

### F. Plaintiff Has Failed to Address, at all, Defendant's Arguments in Section 3.F.

Plaintiff's brief fails to respond in any way to Defendant's arguments with respect to the preclusive effect of his acceptance of workers' compensation benefits.  Such a failure to brief the issue is alone a basis for granting Defendant's motion for summary judgment.  <u>Murphy v. Zoning Com'n of Town of New Milford</u>, 289 F.Supp.2d 87, 112 (D.Conn. 2003); <u>Harris v. Key Bank Nat. Ass'n</u>, 89 F.Supp.2d 408, 417 (W.D.N.Y. 2000).  Accordingly, Defendant's motion for summary judgment with respect to damages should be granted absent objection.

                DEFENDANT,
                WORLDWIDE WINES, INC.

                By:_____
                    Marc P. Mercier
                    Federal Bar No. ct10886
                    Beck & Eldergill, P.C.
                    447 Center Street
                    Manchester, CT 06040
                    Tel:  (860) 646-5606

## CERTIFICATION OF SERVICE

    I hereby certify that a copy of the foregoing was mailed on this 9th day of February, 2004 to: Henry F. Murray, Gregg D. Adler, Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 557 Prospect Avenue, Hartford, CT 06105-2922.

                                  Marc P. Mercier    W W W.Callahan\Reply02-04.pld