UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MICHAEL CALLAHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV213 (CFD) |
| v. | : |  |
|  | : |  |
| WORLDWIDE WINES, INC., | : |  |
| Defendant | : |  |
|  | : | NOVEMBER 8, 2004 |

## JOINT PRETRIAL MEMORANDUM

1. **TRIAL COUNSEL:**

    <u>For the Plaintiff</u>:
    Henry F. Murray  ct17234
    Gregg D. Adler ct05698
    Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
    557 Prospect Avenue
    Hartford, CT 06105-2922
    Ph.:  (860) 233-9821
    Fax: (860) 232-7818
    email: hfmurray@lapm.org
          gdadler@lapm.org

    <u>For the Defendant</u>:
    Mark P. Mercier ct10886
    Beck & Eldergill, P.C.
    447 Center Street
    Manchester, CT 06040
    Ph.: (860) 646-5606
    Fax: (860) 646-0054
    email: mmercier@beckeldergill.com

2. **JURISDICTION:**

    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1441.

    Jurisdiction over Plaintiff's claim brought pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. Section 2601 <u>et</u> <u>seq.</u>, is provided pursuant to 29 U.S.C.

- 2 -

Section 2617 and 28 U.S.C. Section 1331. Pursuant to 29 U.S.C. Section 1367, the court has jurisdiction over Plaintiff's pendant state law claim of retaliation brought under Conn. Gen. Stat. Section 31-290a.

3. **JURY/NON-JURY:**

The case will be tried to a jury.

4. **NATURE OF CASE:**

**Plaintiff's Statement:**

Michael Callahan worked for Worldwide Wines, Inc. as a delivery truck driver for nearly eighteen years. As a delivery driver for the defendant, Callahan's job was to delivery wine to the company's customers on a designated delivery route. He worked four, ten-hour days, from Tuesday though Friday. The work involved a great deal of lifting of heavy cases and pushing cases loaded on hand trucks.

In May, 1998, Callahan injured his lower back in the course of his employment, notified the defendant and then submitted a workers' compensation claim with the defendant's insurance carrier. As a result of that injury, the plaintiff lost seven (7) days of work and required another three (3) days of restricted activity. In May, 1999, Callahan re-injured his lower back and processed another claim for workers' compensation. That injury resulted in a loss of ten (10) days of work. In 2000 Callahan suffered a series of additional injuries at work resulting in a substantial amount of lost time from his job. On January 18, 2000 he injured his ankle at work, filed a workers' compensation claim and lost fifteen (15) days from work. On May 19, 2000 Callahan suffered a cervical strain at work causing him to miss another seven (7) days and to file another workers' compensation claim. Finally, on November 22, 2000, Callahan re-

- 3 -

injured his lower back and lost the balance of the work year or another twenty-one (21) days from work. He did not return to work until January 8, 2001, losing an additional four days of work in 2001. In total, Callahan lost sixty-four (64) days from work due to workers' compensation injuries from May, 1998 through December, 2000 with forty-three (43) of those absences in the year 2000. Just prior to his last back injury, Callahan informed Gary McCabe, the defendant's comptroller, that he was rated as 10% disabled due to his back injuries by the Workers' Compensation Commissioner on August 16, 2000.

In October, 1999, Callahan informed the defendant that he had been diagnosed as having Hepatitis C, a chronic disease that impairs liver function. As a result of this diagnosis, Callahan was required to begin treatment in February, 2000. Drug therapy for this disease makes it impossible to continue working during treatment requiring Callahan to request time off the job under the Family Medical Leave Act. The plaintiff was out on FMLA leave for treatment from February 14 through March 17, 2000 and again for a second round of therapy from June 5 through August 6, 2000. The defendant does not provide for any salary continuation during FMLA leave but does continue to provide group medical benefits. Upon the completion of his FMLA leave for Hepatitis C treatments, the plaintiff requested to take his two-week paid vacation and returned to work full time on August 20, 2000.

Because of his various workers' compensation claims and time off on FMLA leave, Callahan actually worked for Worldwide Wines for no more than twenty (20) weeks during the year 2000.

- 4 -

Four weeks after returning from this most recent workers' compensation injury, Callahan was informed by McCabe, on February 2, 2001, that he was being terminated for "poor performance." On that same day, the defendant terminated two other drivers, Greg Mihalko and Roger Watson. At the time of their firings, Callahan, Mihalko and Watson had the highest number of days lost to workers' compensation injuries among Worldwide Wines' employees for the past three years.

From the time he returned to work in August, 2000 until the date of his termination in February, 2001, Callahan was not counseled by anyone in management of the company regarding his performance or productivity as a driver. Throughout his entire tenure with Worldwide Wines, Callahan never received any oral or written warnings regarding his performance or productivity.

Worldwide Wines was sensitive to the rising cost of workers' compensation insurance premiums in 1998, 1999 and 2000. McCabe kept track of these workers' compensation expenses. During calendar year 2000, McCabe specifically tracked Callahan's use of both workers' compensation time and medical leave under the Family Medical Leave Act. By the time Callahan returned to work after his last workers' compensation injury, he had lost a total of nearly twenty six weeks of work during 2000 due to his FMLA leave and work-related injuries.

It is the plaintiff's contention that the defendant terminated him in whole, or in part, because of his claims filed for workers' compensation, his time off the job and his use of medical leave to treat his Hepatitis C. As such the employer discriminated against Callahan because he exercised rights under the workers' compensation statutes and interfered with his rights under the FMLA or retaliated against him for

- 5 -

exercising his rights under the FMLA.

**Defendant's Statement:**

Defendant is a wine wholesaler located in Cheshire, Connecticut. Defendant's business is to sell and deliver wine to package stores, restaurants, and other customers located throughout Connecticut. Plaintiff was employed as a delivery truck driver from 1980 to 1986 and again from September, 1988 to February 2, 2001.

In the spring of 1999, Defendant developed a productivity formula which set the minimum expectations for a driver and which also measured a driver's performance relative to the other drivers working for the company. Absences from work, for whatever reason, were not counted in the formula and employees were judged only on the days they actually worked. Defendant claims that Plaintiff was subjected to the productivity formula on the same basis as any other driver.

Defendant contends that under the productivity formula, Plaintiff was regularly the worst performing driver in the company. Defendant claims that Plaintiff regularly failed to complete his route, and failed to return on time to its warehouse so that he could perform the other duties that were part of his job. Defendant claims that it reassigned Plaintiff to the easiest delivery route in March, 1999 in an attempt to address his performance problems.

Defendant contends that despite being assigned to the easiest delivery route, Plaintiff continued to be rated as the worst performing driver under the productivity formula. Defendant claims that Plaintiff regularly failed to complete his routes or deliver wine in a timely manner. Defendant contends that Plaintiff, despite failing to complete his route, returned to the warehouse late in order to avoid performing duties that were

- 6 -

part of his job. Defendant claims that Plaintiff's failings disrupted the deliveries of other drivers and required other employees to do his work for him. Those employees, Defendant contends, regularly complained to Defendant about Plaintiff's poor performance and requested that action be taken against Plaintiff.

In the fall of 2000, Defendant reviewed Plaintiff's performance and decided to terminate him, along with other poorly performing drivers, after Defendant's busy season ended in January, 2001. Defendant claims that when it reviewed its decision after December, 2000, Plaintiff remained the worst performing driver under the formula.

Defendant contends that it terminated Plaintiff on February 2, 2001 because of his long-standing history of poor performance. Defendant denies that it discriminated and/or retaliated against Plaintiff for any reason. Defendant granted to Plaintiff more leave time than was required under the Family and Medical Leave Act. Defendant also claims that it provided, without question or concern, time off and benefits whenever Plaintiff claimed a work related injury. Defendant claims that instead of retaliating or discriminating against Plaintiff that it provided Plaintiff every opportunity to improve his performance. Defendant claims Plaintiff failed to improve and was terminated simply because he did not do his job.

5. **STIPULATIONS OF FACT AND LAW**

    1.    The plaintiff, Michael Callahan, is a citizen of the United States residing in Meriden, Connecticut.

    2.    Worldwide Wines, Inc., is a Connecticut corporation with an office and principal place of business located at 155 School House Road, Cheshire, Connecticut.

    3.    Callahan was employed by Worldwide Wines as a truck driver from on or

- 7 -

about September 22, 1988 until February 2, 2001.

4. During the course of the plaintiff's employment with the defendant he suffered a number of work-related injuries. He injured his lower back, in separate incidences, on May 22, 1998, May 19, 1999 and November 22, 2000. He also sustained an ankle injury on January 18, 2000.

5. As a result of work-related back injuries in 1998 and 1999, the Workers' Compensation Commission approved a voluntary agreement on August 16, 2000 setting the plaintiff's permanent disability at 10%.

6. After the plaintiff's last work-related back injury he was out of work for approximately six weeks from November 22, 2000 to on or about January 8, 2001.

7. In October of 1999, Callahan was diagnosed with Hepatitis C and he began treatment for that disease in February 2000.

8. Callahan's medical treatment for Hepatitis C required that he apply for and take twelve (12) weeks of Family Medical Leave Act (FMLA) during the year 2000. The plaintiff took four (4) weeks of FMLA leave in February and March, 2000 and another eight (8) weeks of leave during June, July and August, 2000.

9. On February 2, 2001, the defendant informed the plaintiff that he was being terminated from his job.

6. **PLAINTIFF'S CONTENTIONS**

   a. **Workers' Compensation Retaliation Under C.G.S. § 31-290a**

The plaintiff contends that by retaliating against the plaintiff because he filed workers' compensation claims, collected benefits and received time off due to those

- 8 -

injuries, that the defendant discriminated against him and interfered with his exercise of rights under the workers' compensation statutes.

### b. Interference With Rights Under Family Medical Leave Act

Plaintiff contends that the defendant interfered with his rights under the Family Medical Leave Act by terminating his employment because he used such leave entitlement.   Alternatively, the plaintiff contends that the defendant retaliated against the plaintiff for exercising his right to take medical leave due to his severe medical condition of Hepatitis C.

7. **DEFENDANT'S CONTENTIONS**

Defendant denies all of Plaintiff's allegations of discrimination and/or retaliation. Plaintiff suffered no adverse consequence from taking leave under FMLA or for having obtained workers' compensation benefits. Plaintiff was terminated for failing, after disciplinary action, to perform his duties as a truck driver in a satisfactory manner. Plaintiff was thus terminated for a legitimate non-discriminatory reason unrelated to his claims for workers' compensation benefits or leave under the FMLA.

Plaintiff failed to mitigate his damages by filing for and obtaining benefits pursuant to Conn. Gen. Stat. Section 31-208a.  Plaintiff is further estopped from claiming damages for the same reason.

8. **LEGAL ISSUES**

1. Is the Plaintiff estopped from claiming economic damages stemming from his termination where he twice applied for and accepted benefits pursuant to Conn. Gen. Stat. Section 31-308a?

- 9 -

9. **VOIR DIRE QUESTIONS**

    Please see attached.

10. **LIST OF WITNESSES**

    A.  PLAINTIFF'S WITNESSES

    1.  **Michael Callahan**, 25 Grove Court, Meriden, CT.  The plaintiff will testify about the factual allegations in the complaint, including his employment history, his workers' compensation and medical injuries, the circumstances surrounding his discharge and the effect on him of that discharge as to economic damages. [Three hours]

    2.  **Howard S. Weiss**, 155 School House Rd., Cheshire, CT 06410. Mr. Weiss is president of Worldwide Wines, Inc. and an individual who participated in the decision to terminate the plaintiff.  Mr. Weiss will be called as an adverse witness pursuant to Fed. R. Evid. 611(c).  [Two hours]

    3.  **Gary McCabe**, 155 School House Rd, Cheshire, CT 06410.  Mr. McCabe is comptroller for Worldwide Wines, Inc., the plaintiff's immediate supervisor and participated in the decision to terminate the plaintiff.  Mr. McCabe will be called as an adverse witness pursuant to Fed. R. Evid. 611(c).  [Four hours]

    4.  **Gregg Mihalko**, 163 N. Summit Street, Southington, CT 06489. Mr. Mihalko is a former employee of the defendant expected to testify about his own employment with the defendant and on matters related to the plaintiff's employment and termination. [One hour]

    5.  **Roger Watson**, 56 Park St. Bristol, CT 06010.  Mr. Watson is a former employee of the defendant expected to testify about his own employment with the defendant and on matters related to the plaintiff's employment and termination. [One hour]

    B.  DEFENDANT'S WITNESSES

    A.  **Howard S. Weiss**, Worldwide Wines, Inc., 155 School House Road, Cheshire, Connecticut 06410.  Mr. Weiss will testify with respect to the Defendant's operations, the Plaintiff's employment with the Defendant, including the provision of FMLA and Workers'

- 10 -

Compensation leave time, the Defendant's measurement of driver performance, Plaintiff's duties, performance, attendance, and discipline, Plaintiff's performance under the Defendant's measurement formula, and Defendant's reason(s) for terminating Plaintiff;

B. **Gary McCabe**, Worldwide Wines, Inc., 155 School House Road, Cheshire, Connecticut 06410. Mr. McCabe will testify with respect to the Defendant's operations, the Plaintiff's employment with the Defendant, including the provision of FMLA and Workers' Compensation leave time, the Defendant's measurement of driver performance, Plaintiff's duties, performance, attendance, and discipline, Plaintiff's performance under the Defendant's measurement formula, and Defendant's reason(s) for terminating Plaintiff;

C. **Louis F. Bouthot**, 39 Coack Drive, Wolcott, Connecticut 06716. He will testify with respect to the Defendant's operations, his employment with the Defendant, including his duties and responsibilities, the Plaintiff's employment with the Defendant, including Plaintiff's duties and performance, and complaints made to and about Plaintiff;

**OBJECTION:** **Plaintiff objects to any proposed testimony on the plaintiff's job performance inasmuch as the witness was not Mr. Callahan's supervisor nor functioned in a supervisory or management position for the defendant.**

D. **Angelo Pelosi**, 585 Park Road 1-3, Waterbury, Connecticut 06708. He will testify with respect to the Defendant's operations, his employment with the Defendant, including his duties and responsibilities, the Plaintiff's employment with the Defendant, including Plaintiff's duties and performance, and complaints made to and about Plaintiff;

**OBJECTION:** **Plaintiff objects to any proposed testimony on the plaintiff's job performance inasmuch as the witness was not Mr. Callahan's supervisor nor functioned in a supervisory or management position for the defendant.**

E. **Robert Jaglowski**, Worldwide Wines, Inc., 155 School House Road, Cheshire, Connecticut 06410. He will testify with respect to the Defendant's operations, his employment with the Defendant, including his duties and responsibilities, the Plaintiff's employment with the Defendant, including Plaintiff's duties and performance,

- 11 -

and complaints made to and about Plaintiff;

**OBJECTION:** **Plaintiff objects to any proposed testimony on the plaintiff's job performance inasmuch as the witness was not Mr. Callahan's supervisor nor functioned in a supervisory or management position for the defendant.**

    F.    **Billy Schwabe**, Worldwide Wines, Inc., 155 School House Road, Cheshire, Connecticut 06410. He will testify with respect to the Defendant's operations, his employment with the Defendant, including his duties and responsibilities, the Plaintiff's employment with the Defendant, including Plaintiff's duties and performance, and complaints made to and about Plaintiff

**OBJECTION:** **Plaintiff objects to any proposed testimony on the plaintiff's job performance inasmuch as the witness was not Mr. Callahan's supervisor nor functioned in a supervisory or management position for the defendant.**

    G.    **Pat Jarry**, Worldwide Wines, Inc., 155 School House Road, Cheshire, Connecticut 06410. He will testify with respect to the Defendant's operations, his employment with the Defendant, including his duties and responsibilities, the Plaintiff's employment with the Defendant, including Plaintiff's duties and performance, and complaints made to and about Plaintiff;

**OBJECTION:** **Plaintiff objects to any proposed testimony on the plaintiff's job performance inasmuch as the witness was not Mr. Callahan's supervisor nor functioned in a supervisory or management position for the defendant.**

    H.    **Brian Kociszewksi**, 148 Clearview Avenue, Watertown, Connecticut 06795. He will testify with respect to the Defendant's operations, his employment with the Defendant, including his duties and responsibilities, the Defendant's measurement of driver performance, the Plaintiff's employment with the Defendant, including Plaintiff's duties and performance under the Defendant's measurement formula.

    I.    **Plaintiff Michael Callahan**. He will testify regarding his claims, his failure to mitigate his damages, his filing for workers' compensation benefits, his filing for FMLA benefits, his employment with the Defendant, including his duties, responsibilities, performance and attendance, the Defendant's measurement of his performance, and complaints made to and about Plaintiff.

- 12 -

11. **EXHIBITS:**

    A.    PLAINTIFF'S EXHIBITS

        1.    Workers' Compensation Commission Employer's First Report of Injury, May 22, 1998

        2.    Workers' Compensation Commission Employer's First Report of Injury, May 19, 1999

        3.    Workers' Compensation Commission Employer's First Report of Injury, January 19, 2000

        4.    Workers' Compensation Commission Employer's First Report of Injury, May 18, 2000

        5.    Workers' Compensation Commission Employer's First Report of Injury, November 26, 2000

        6.    Workers' Compensation Commission Employer's First Report of Injury, November 22, 2000

        7.    Bureau of Labor Statistics Log and Summary of Occupational Injuries, 1998

**Defendant reserves the right to object depending upon Plaintiff's use.**

        8.    Bureau of Labor Statistics Log and Summary of Occupational Injuries, 1999

**Defendant reserves the right to object depending upon Plaintiff's use.**

        9.    Bureau of Labor Statistics Log and Summary of Occupational Injuries, 2000

**Defendant reserves the right to object depending upon Plaintiff's use.**

        10.    Michael Callahan Personnel Record

**Defendant reserves the right to object depending upon Plaintiff's use.**

        11.    Gary McCabe telephone log, Mini Agenda, May 18, May 19

**Defendant reserves the right to object depending upon Plaintiff's use.**

- 13 -

    12.    Disciplinary Warning - Michael Callahan, October 14, 1998 and attached four (4) page Payroll History report

    13.    Termination memo, Michael Callahan, Roger Watson, January 30, 2001

    14.    Employee Disciplinary/Productivity Warnings, 1998 - 2003

**Defendant reserves the right to object depending upon Plaintiff's use.**

    15.    List of terminated employees, 1998 - 2003

**Defendant reserves the right to object depending upon Plaintiff's use.**

    16.    Letter to Gary McCabe from Michael Callahan, February 12, 2001

**Defendant objects to this document in that the document is irrelevant and contains inadmissible hearsay.  Federal Rules of Evidences 402; 801; 802.**

    17.    Letter to Gary McCabe from Gregg Adler, April 17, 2001

**Defendant objects to this document in that the document is irrelevant and contains inadmissible hearsay.  Federal Rules of Evidences 402; 801; 802.**

    18.    Letter to Gary McCabe from Gregg Adler, May 8, 2001

**Defendant objects to this document in that the document is irrelevant and contains inadmissible hearsay.  Federal Rules of Evidences 402; 801; 802.**

    19.    Analysis Sheet/Route Productivity forms, 2000

    20.    Analysis Sheet / Route Productivity forms, 2001

    21.    Michael Callahan WC time / Family sick time tracking sheet, 2000

    22.    Gary McCabe note regarding Michael Callahan disability rating

    23.    Special Investigations & Recovery reports, 11/4/98; 11/5/98; 11/19/98.

- 14 -

    B.    DEFENDANTS' EXHIBITS

**GENERAL OBJECTION:** **In addition to any specific objections set forth below, the Plaintiff reserves the right to object to the Defendants' exhibits depending upon their intended purpose at trial.**

    A.    Plaintiff's CHRO Complaint dated July 16, 2001;

    B.    Plaintiff's Complaint dated January 7, 2003;

    C.    Plaintiff reserves the right to use the deposition of Michael Callahan dated September 29, 2003 as needed;

    D.    Special Investigations & Recoveries Report dated November 23, 1998;

    E.    Drivers Productivity Evaluation dated March 11, 1999;

    F.    Service Agreement with @Road dated September 15, 1999;

    G.    Disciplinary Warning dated April 16, 1997;

    H.    Disciplinary Warning dated September 23, 1997;

    I.    Disciplinary Warning dated October 14, 1998;

    J.    Disciplinary Warning dated December 8, 1999;

    K.    Letter from Plaintiff dated January 16, 2000;

    L.    Note from Plaintiff dated December 6, 1999;

    M.    Employer Response to Employee Request for Family or Medical Leave dated February 14, 2000;

    N.    Employer Response to Employee Request for Family or Medical Leave dated June 5, 2000;

    O.    Employee Response to Employee Request for Family or Medical Leave dated July 20, 2000;

    P.    Michael Callahan FMLA Leave Calculations for 2000;

- 15 -

    Q.    Weekly Analysis Sheets for Route Productivity for 2000;

    R.    Weekly Analysis Sheets for Route Productivity for January and February, 2001;

    S.    Summary of Weekly Analysis Sheets for Route Productivity for the period July through December, 2000;

    T.    Summary of Weekly Analysis Sheets for Route Productivity Summary for January through June, 2001;

    U.    31-308a Order dated August 29, 2001;

    V.    31-308a Order dated November 28, 2001;

    W.    Affidavit of Michael Callahan dated January 28, 2004;

    X.    Plaintiff's Unemployment Notice.

12. **DEPOSITION TESTIMONY:**

The parties do not anticipate needing to have any witnesses testify by deposition at trial.

13. **REQUESTS FOR JURY INSTRUCTIONS**

Please see attached.

14. **ANTICIPATED EVIDENTIARY PROBLEMS:**

The parties are unaware of any evidentiary problems or pending motions regarding evidence at this time.

15. **PROPOSED FINDINGS AND CONCLUSIONS**

Not applicable.

16.  **TRIAL TIME**

The parties anticipate that this case will require three to five (3-5) days for trial.

17.  **FURTHER PROCEEDINGS**

There are no pending motions in this case.

18.  **ELECTION FOR TRIAL BY MAGISTRATE**

The parties do not consent to a trial by Magistrate.

Respectfully submitted,

FOR THE PLAINTIFF                                    FOR THE DEFENDANT


_____          _____
Henry F. Murray ct17234                      Mark P. Mercier ct10886
Gregg B. Adler ct05698                       Beck & Eldergill, P.C.
Livingston, Adler, Pulda, Meiklejohn         447 Center Street
   & Kelly, P.C.                             Manchester, CT 06040
557 Prospect Avenue                          Ph.: (860) 646-5606
Hartford, CT 06105-2922                      Fax: (860) 646-0054
Ph.:  (860) 233-9821
Fax: (860) 232-7818